UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC FURNO,

        Plaintiff,

v.                                                    Case No.  8:19-cv-2808-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

        Defendant.
_____/

### ORDER

Plaintiff seeks judicial review of the denial of his claims for period of disability benefits, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.     Procedural Background**

Plaintiff filed applications for DIB on March 11, 2015 and SSI on February 10, 2015 (Tr. 326-337).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 88-102, 103-111, 119-129, 130-147).  Plaintiff then requested an administrative hearing (Tr. 199-200).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 36-53).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr.155-165).  Subsequently, the Appeals Council granted Plaintiff's request for

review, and remanded the case for further proceedings.  The Appeals Council directed the ALJ to consider the opinions of Drs. Vijapura and Vega, directed the ALJ to further evaluate Plaintiff's mental impairments, further consider Plaintiff's maximum RFC, and obtain evidence from a VE (Tr. 174-176).

The ALJ held a second hearing, and issued another unfavorable decision (Tr. 10-25).  Thereafter, Plaintiff again requested review by the Appeals Council, and the Appeals Council denied review (Tr. 1-3).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**II.    Factual Background and the ALJ's Decision**

Plaintiff was born on July 18, 1981 and was 31 years old on May 1, 2008, his alleged disability onset date (Tr. 38).  Plaintiff completed high school and attended one year of college (Tr. 370), then worked from 1990-2008 as a billing coordinator and as a database assistant (Tr. 360, 395).  Unfortunately, Plaintiff was incarcerated from 2008 through 2011, and has not worked since his release in 2011 (Doc. 26, p.3; Tr. 481-82). Plaintiff claimed disability due to generalized anxiety disorder, depression, morbid obesity, social phobia, lower back pain, left leg numbness/tingling, and foot pain (Tr. 103).  As a result of social phobia, Plaintiff only leaves his home with a family member and ventures out only for appointments or to grocery shop (Tr. 39-42, 410).  Plaintiff was married from 2008-2016 (Tr. 43, 323).  After his wife left him, Plaintiff moved into his parents' home (Tr. 42-43).

In rendering his February 27, 2019 administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 1, 2008, the alleged

onset date (Tr. 13).[1]  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: "anxiety disorder, depression, obesity, back disorder, and obstructive sleep apnea" (Tr. 13).  The ALJ opined that Plaintiff's irritable bowel syndrome, gastroesophageal reflux disease, and hypertension are non-severe impairments as they are controlled by medication, and/or have not lasted for twelve consecutive months (Tr. 13-14).  Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).  The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> … can lift and carry 20 pounds occasionally; can lift and carry 10 pounds frequently; can stand and walk 6 hours in an 8-hour workday; can [sic] for 6 hours in an 8-hour workday; can occasionally climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, crawl, kneel and crouch; should avoid extreme cold, extreme heat, excessive humidity; should avoid pulmonary irritants such as fumes, odors, dust and gases; should avoid hazards; limited to work only to include understanding, remembering, carrying out and performing simple routine tasks and instructions; and occasional interaction with the public, co-workers and supervisors; and occasional changes in work setting.

(Tr. 16).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of

---

[1] Although Plaintiff originally claimed a disability onset date of May 1, 2008, his attorney indicated at the administrative hearing that the onset date was amended to April 2, 2013 (Tr. 38, 103).

underlying physical and mental impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).  Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform work as a sorter, deliverer marker, and shoe packer (Tr. 24-25).  The ALJ found Plaintiff not disabled (*Id.*).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.   If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe

impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff advances four arguments: 1) the ALJ failed to properly consider the opinions of Ashit Vijapura, M.D. (his treating psychiatrist) and Felix Subervi (a consultative psychologist); 2) the ALJ's RFC determination and VE hypothetical were not supported by substantial evidence; 3) the ALJ erred by failing to consider records from Kathryn Lamson (Plaintiff's LMHC); and 4) the ALJ's credibility determination was not supported by substantial evidence (Doc. 19 at 28-58).  The Commissioner responds that the ALJ's decision is supported by substantial evidence.  The Court finds that the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence. Because the ALJ erred in weighing the medical opinions, the first and third issues will be combined and discussed first.

### A. Medical Opinions

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v.*

*Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) [2] (citing 20 C.F.R. § 404.1527(b)). [3] An ALJ has wide latitude to evaluate the weight of the evidence, and there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Instead, the ALJ's decision must reflect that he has considered the medical evidence as a whole and that substantial evidence supports his conclusions. *Id.* (citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995)).

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4),

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[3] These regulations were amended effective March 27, 2017, after Plaintiff filed his application. *See* 20 C.F.R. § 404.1520c. The amendments do not apply to Plaintiff's claim.

416.927(c)(4).   Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

### 1.  Ashit Vijapura, M.D.

Plaintiff began treating with psychiatrist Ashit Vijapura, M.D. in February 2015 when he moved to Florida to be closer to his parents.  Between February 2015 and December 2018, Plaintiff received regular psychiatric treatment at Dr. Vijapura's office for anxiety, panic attacks, and social phobia (Tr.1007-1039, 1116-1122, 1189-1217). Treatment notes from 2015 and 2016 generally reflect that Plaintiff reported he felt easily agitated, depressed, and hopeless; had difficulty sleeping, focusing, and concentrating; was unable to leave his home without his wife or mother; and struggled with feeling compelled to inflict self-harm (at times he has cut his forearms) (Tr. 42, 1007-1039).  By mid-2016, Dr. Vijapura had adjusted Plaintiff's prescription medications multiple times and added Valium to Plaintiff's treatment regime.  Plaintiff reported feeling better than ever; however, he continued to suffer from panic attacks and did not leave his home without his wife (Tr. 1116-1122).

Dr. Vijapura's treatment notes from mid-2017 through 2018 show Plaintiff's condition deteriorated when his wife left him.  He struggled with thoughts of self-harm

and felt more depressed and anxious. He moved in with his parents, but experienced anxiety due to new stressors there. During this timeframe, some of Dr. Vijapura's mental status exams were "normal," while on other dates the psychiatrist characterized Plaintiff's affect as tearful (Tr. 1195) or flat (Tr. 1211) and his thought process as tangential (Tr. 1199). In October 2018, Plaintiff reported that he was finally feeling a lot better and that his medications were working again (Tr. 1189). However, the December 5, 2018 final office visit note indicates that when Plaintiff first began treatment with Dr. Vijapura he was "a total mess and he's thankful with the medication his panic attacks [are] more under control. Patient states he spend[s] 90 percent of hi[s] life in his room" (Tr. 1232). Dr. Vijapura's December 5, 2018 mental status examination characterized Plaintiff's affect and insight as appropriate, but described his appearance as fair, speech as pressured, mood as anxious, judgment as fair, thought process as tangential, and his response to medication as "anxiety and not sleeping" (Tr. 1233).

On June 29, 2016, Dr. Vijapura completed a Mental Impairment Questionnaire (Tr. 1042-46). By placing check marks on the form, Dr. Vijapura opined that Plaintiff's mental ability to function at work would be precluded 15% or more of an 8-hour workday in the majority of the functions within the areas of Understanding and Memory, Sustaining Concentration and Memory, Social Interaction, and Adaptation (Tr. 1045-46). On the short answer portion of the form, Dr. Vijapura wrote that "Patient suffers from severe anxiety which interferes w/ his ability to interact w/ people. Symptoms worsen when away from home. Patient has a hx of outbursts of anger – visible scars on left forearm. Patient is co-dependent on spouse who accompanies him each visit … Patient

suffers from severe anxiety and social phobia.  Patient's mood is depressed most days"
(Tr. 1043).    Dr. Vijapura indicated that "Patient's symptoms have been resistant to
medication" and described his prognosis as "fair" (Tr. 1043-44).  He opined that Plaintiff's
impairments would cause his absence from work more than three times a month, and that
he would have difficulty working at a regular job on a sustained basis (Tr. 1044).

On November 13, 2018, Dr. Vijapura completed a second Mental Medical Source
Statement applicable to the time frame "December 1, 2013 through present" (Tr. 1229-
1133).  Dr. Vijapura checked boxes indicating Plaintiff's ability to adjust to a job was
"poor" with regard to dealing with work stresses, dealing with public, and maintaining
attention and concentration; "fair" with regard to interacting with supervisors, relating to
co-workers, functioning independently, and using judgment with the public; and "good"
with regard to following the rules (Tr. 1229-30).  In support of this assessment, Dr.
Vijapura explained:

> Plaintiff suffers from severe anxiety which interferes w/ his ability to interact w/
> people.  Symptoms worsen when away from home.  Patient has a hx of outbursts
> of anger and harming self (suicidal tendencies) visible scars on forearms.  Pt's
> mood is depressed most days, which impairs concentration and prevent [sic] him
> for [sic] completing tasks due to [decreased] energy and mood disturbances pain
> restricts activities due to bulging discs.

Tr. 1230.  Dr. Vijapura opined that Plaintiff's ability to adjust to a job was "poor" with
regard to understanding, remembering and carrying out complex job instructions; "fair"
with regard to detailed but not complex job instructions; and "good" with regard to simple
job instructions (Tr. 1231).  In support, Dr. Vijapura stated: "Patient is forgetful and
admits to concentration issues.  Clinically dx ADHD in 2005" (Tr. 1231).  Dr. Vijapura
indicated Plaintiff's ability to adjust personally and specially was "fair" regarding

maintaining personal appearance and behaving in an emotionally stable manner; and "good" regarding relating predictably and demonstrating reliability (Tr. 1231).   He explained, "Due to pt's social phobia, panic attacks may interfere with reliability / showing up for work.   Also depression leading to lack of interest to do activities" (Tr. 1231).

While the ALJ recognized that Dr. Vijapura provided psychiatric care to Plaintiff for several years, the ALJ assigned Dr. Vijapura's June 29, 2016 opinion "little weight" because "the findings are not consistent with his own treatment notes" (Tr. 21).   In support, the ALJ referred to only one treatment note from "around the date of his opinion" in an attempt to establish that Plaintiff began experiencing less frequent and less severe panic attacks since the addition of Valium.   The ALJ indicated mental status examination on that date showed "normal" motor activity; "good" speech; and "appropriate" affect, insight, and judgment (Tr. 21 citing Exhibit 16F/2).   Similarly, the ALJ found Dr. Vijapura's November 13, 2018 opinion "not consistent with the evidence as a whole as it relates to the claimant's overall function and course of treatment" (Tr. 22). The ALJ opined that the other opinions of record were more consistent with each other and the medical record as a whole (Tr. 22-23), but cited only to the opinion of consultative psychologist Nydia Conrad who examined Plaintiff at the request of the SSA on September 25, 2018 (Tr. 1171-72).   The ALJ afforded "great weight" to Conrad's opinion as well as the opinions of two non-examining state agency psychologists, Barry Morris and Lawrence Annis, who reviewed Plaintiff's records at the administrative level in 2015 (Tr. 20, 22)

Applying the *Phillips* factors, the Court finds that the ALJ has failed to show "good cause" for assigning only "little weight" and "some weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Vijapura. *Phillips, supra,* 357 F.3d at 1240-41. The ALJ discounted Dr. Vijapura's opinions as inconsistent with the psychiatrist's own treatment notes that the ALJ opined reflect mostly normal mental status examinations (Tr. 21, 22-23). While on some dates throughout his extensive treatment with Dr. Vijapura Plaintiff's mental status exams were essentially "normal," on other dates they were not. Dr. Vijapura's office notes show that Plaintiff struggled with severe anxiety that was difficult to control with medication and interfered with his ability to interact with others outside of his family. While his reports may not indicate specific laboratory test results, they include signs and symptoms supporting his diagnoses including depressed mood, fear of panic attacks, difficulty sleeping, anxiety that doesn't go away, difficulty with focusing and concentration, jumpy and easily startled, OCD-like tendencies (fist-making, checking numbers (TV volume must be 5s or 10s, money in bank must be even numbers)), compulsion to eat all food until it is gone, inability to leave home independently, distressed around other people, obsessions with order and list-making, fleeting eye contact, hand wringing, almost never separates from wife, feeling hopeless, trouble breathing when out in public, sad all the time, thoughts and urges of self-harm (Tr. 1007, 1009, 1013, 1017, 1015, 1019, 1027, 1029, 1031, 1033, 1038, 1039, 1116, 1118, 1122, 1193, 1203, 1205, 1207, 1215, 1217). Dr. Vijapura used these signs and symptoms to diagnose Plaintiff with anxiety, panic attacks, and social phobia.

The Social Security Regulations' definition of "objective medical evidence" includes medical "signs," which, in the context of a psychiatric observation, means "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated" 20 C.F.R. § 404.1502(g).  Certain medical symptoms, when analyzed by a physician or psychologist, can point out identifiable elements of a specific impairment. Indeed, for many psychiatric and psychological impairments, medical signs and symptoms are often the only means available to prove the existence and severity of these impairments.  *See e.g. Diaz v. Berryhill*, case no. 18-cv-24437-Moreno-Louis, 2020 WL 1308669 (S.D. Fla. Feb. 27, 2020) (citing *Ortega v.Chater*, 933 F.Supp 1071, 1075 (S.D. Fla. 1996)) (reversing and remanding where ALJ failed to acknowledge the abundant documentation of Plaintiff's depression and anxiety symptoms as being "objective" evidence to support Plaintiff's treating physician's opinion); *Gutierrez v. Saul*, case no. 1:19-cv-20859-Moreno-Louis, 2020 WL 4275202 (S.D. Fla. July 7, 2020) (remanding ALJ's decision that discounted treating psychiatrist's opinions finding them inconsistent with his contemporaneous treatment notes where Court found psychiatrist's notes set forth medical signs and symptoms sufficient to justify his diagnoses and treatment).

A "psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning" and "it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because the opinion draws from the claimant's reported symptoms." *McVey v. Saul*, case no. 8:18-cv-2304-T-SPF,

2020 WL 2570073 (M.D. Fla. May 21, 2020) (citing *Roundtree v. Saul*, case no. 8:18-cv-1524-T-SPF, 2019 WL 4668174, \*4 (M.D. Fla. Sept. 25, 2019) (quoting *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016))). In this case, the ALJ concluded that Dr. Vijapura's opinions were inconsistent with his records, however, the vast majority of Dr. Vijapura's records document abnormalities in Plaintiff's behavior, mood, thought process, and daily functioning over a period of several years. The ALJ failed to discuss this abundant documentation in reaching his decision to accord less weight to Dr. Vijapura's opinions. Contrary to the ALJ's finding, Dr. Vijapura's opinions were consistent with the treatment records.

*Phillips* also dictates that an ALJ has good cause for assigning less weight to a treating physician's opinion when the treating physician's opinion was not bolstered by the evidence; or where the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41. The ALJ discounted Dr. Vijapura's November 2018 opinions because they were inconsistent with other opinions of record. Review of the evidence shows that records from both LMHC Lamson and consulting psychiatrist Subervi discuss Plaintiff's struggles with anxiety and social phobia, and his limitations arising from these impairments. At most, the records create a trivial tension but do not show a genuine inconsistency. Against this backdrop, the Court is hard pressed to find substantial evidence supports the ALJ's decision to accord only little or some weight to the opinions of Dr. Vijapura, a psychiatrist who treated Plaintiff regularly for over three years, and whose opinions are consistent with other record evidence.

The regulations require the ALJ to consider various factors in evaluating medical opinions, including the length of the treatment relationship and frequency of visits, the nature and extent of the treatment relationship, how much relevant evidence supports the opinion, how consistent the opinion is with the record, and whether the physician is a specialist.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ did not follow this regulatory scheme.  The Court finds the ALJ lacked "good cause" to assign less weight to Dr. Vijapura's opinions.

### 2.  LMHC Kathryn Lamson

This segues into the ALJ's failure to discuss or weigh the opinions of Plaintiff's licensed mental health counselor, Kathryn Lamson (Tr. 1096-1100, 1154).  Lamson met with Plaintiff bi-weekly or weekly beginning March 23, 2015, first at the request of the Florida Department of Vocational Rehabilitation and then at Plaintiff's request (Tr. 1096-1100, 1154).  Unlike an "acceptable medical source," the opinions of "other sources" such as licensed mental health counselors are "not medical opinions … entitled to any special significance or consideration."  *Lange v. Comm'r of Soc. Sec.*, case no. 2:17-cv-614-FtM-DNF, 2019 WL 643714, at *4 (M.D. Fla. Feb. 15, 2019).  Thus, Lamson's opinions "cannot establish the existence of a medically determinable impairment."  *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x. 611, 613 (11th Cir. 2017).  However, the SSA recognizes that due to "other sources" assuming a "greater percentage of the treatment and evaluation functions," the opinions of these sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  Because

the ALJ is required to consider all relevant evidence when making a disability determination, "the case record should reflect the consideration of opinions from ["other sources"] who have seen the claimant in their professional capacity." *Id.*   The ruling specifies that the ALJ should consider the same factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) when weighing evidence from "other sources." *Id.*

The ALJ failed to discuss or weigh Lamson's records and opinions.  Lamson's July 12, 2016 record indicates Plaintiff presented with depression, anxiety, social phobia, and panic attacks when she began working with him in March 2015 for weekly individual therapy.  Similar to Dr. Vijapura's records, Lamson's records reflect Plaintiff's subjective report: "I have a difficult time dealing with people, especially crowds, I find it very hard to go places alone.  My wife stays with me basically all the time. I do not socialize with anyone outside my family.  I am trying to overcome some of my problems so that I can find a job that I am capable of doing." (Tr. 1096).  Lamson's August 15, 2015 record explains that Plaintiff's shame and ostracism of his criminal history increases his social phobia and results in the need for him to be with his wife when in public.  "He lives in fear that he will be falsely accused of violating his probation and will be sent back to prison" (Tr. 1097).  Lamson opined that although Plaintiff worked in the past, those jobs "came to him" and allowed him to work in socially isolated and predictable environments. She continued:

> he has functioned successfully when put in front of a keyboard, away from others, but that has been the extent of his adult work capacity; and that was his highest level of functioning. Currently, his depression and anxiety may even impede the above.  He is a very bright individual but his emotional issues are debilitating. His plan is to apply for disability, continue with therapy, and complete his legal tasks.  His long term goal is to return to full time work (with his wife, starting a

16

dog boarding day care in their home) where he can once again support himself and his family.

R. 1097.[4]

While the ALJ was free to reject Lamson's opinions, he was not free to totally ignore her opinions as they are provided by a source who met one-on-one with Plaintiff during the relevant time frame and formed opinions based on her observations and expertise regarding Plaintiff's job-related limitations. *See Naylor v. Astrue*, case no. 2:09-cv-844-FtM-DNF, 2011 WL 972508, *7-8 (M.D. Fla. Mar. 18, 2011) (citing *King v. Astrue*, case no. 3:09-cv-229-J-MCR, 2010 WL 1038476 (M.D. Fla. Mar, 19, 2010)). On remand, the ALJ is directed to consider the medical evidence from Lamson and give it the weight deemed appropriate pursuant to SSR 06-03p.

### 3. Felix Subervi III, Ph.D.

On remand, the ALJ shall also reconsider the opinions of psychologist Felix Subervi III who evaluated Plaintiff at the request of his attorney on August 15, 2016, and administered the Millon Clinical Multiaxial Inventory III and the Vineland Adaptive

---

[4] In a 2017 report, Lamson explained the extent of Plaintiff's "much compromised world" (Tr. 1154). She explained that Plaintiff was completing a sex offender program but planned to continue attending since it was beneficial to him. Plaintiff reported that he had asked the program leader, Dr. Wright, to call on him in class when a question was posed. "Mr. Furno explained that he could not initiate a verbal response and was too anxious to raise his hand but was always prepared to answer. That classroom was one of the few public places where he felt comfortable speaking" (Tr. 1154). Lamson observed that Plaintiff had been coming to her office for over three years and his "facial expression and body language [show that] he continues to exhibit significant anxiety when [she] receives him from the waiting room. Yet, he would also consider that waiting room to be another one of his comfortable public spaces." Lamson opined that these examples highlight Plaintiff's "determination to accomplish his goals … and reflect [that he] continues to operate within a much compromised world" (Tr. 1154).

Behavioral Scale assessments (Tr. 1101-1114).[5]  The Eleventh Circuit recognizes that

opinions from consultative examiners are not owed the same deference as opinions from

treating physicians.  *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987).  Nonetheless,

the regulations require an ALJ to weigh their opinions based on the factors set forth in §§

404.1527(c)(3-6), 416.927(c)(3-6), such as the level of support provided for the opinion

and how consistent the opinion is with the record as a whole.  *Id.*  The ALJ summarized

Dr. Subervi's report:

> On August 15, 2016, Dr. Felix Subervi examined the claimant in a psychological
> evaluation.  A mental status examination showed [his] was normal.  He appeared
> to be a very anxious person with good eye contact.  He was somewhat fidgety.
> His speech was normal in rate. There was no abnormality in his thought content.
> He denied delusions. He was oriented to person, place, time and situation.  His
> judgment was questionable.  Dr. Subervi opined that the claimant if he was to
> work, the job will have to be found and given to him as he will not pass a job
> interview.  Furthermore, it will have to be part time only, but then won't be able
> to support himself or family, perhaps a job with very simple tasks, where he will
> not get too distracted and able to complete it.  He will need a very patient, non
> threatening supervisor and no co-workers around.  In other words, a job for a
> mentally disabled individual.  He will not be able to perform like a regular
> employee. Putting pressure on him to do so will make him decompensate further.
> Dr. Subervi opined that the claimant will not be able to earn a living.

Tr. 21-22 (citing Ex. 20F).  The ALJ assigned "little weight" to Dr. Subervi's opinion,

finding it "contrasts sharply with other evidence of record, which renders it less

persuasive" (Tr. 22).  In support, the ALJ stated:

> the record showed that the claimant stated he had mild anxiety symptoms;
> however, he was able to manage his symptoms. He reported that the medications
> were working well (Exhibit 27F, 5-8) In addition, he reported that he had less

---

[5] The Millon Clinical Multiaxial Inventory III "reports patient personality characteristics
and [assesses] clinical syndromes within the context of those characteristics."
Pearsonassessments.com/store/assessments.  The Vineland Adaptive Behavioral Scale
"aids in diagnosis [and] provides valuable information for developing educational and
treatment plans." *Id.*

frequent and less severe panic attacks since the addition of Valium. His speech was good. His affect was appropriate. He had appropriate insight and judgment. (Exhibit 16F/2) Finally, these are opinions on an issue reserved for the Commissioner.

Tr. 22. The ALJ recognized that the weight assigned to opinions depends upon whether the opinions are supported by specific and complete clinical findings and are consistent with the rest of the evidence in the file (Tr. 22). However, in assigning "little weight" to Dr. Subervi's opinions, the ALJ referred only to two of Dr. Vijapura's treatment notes. While the ALJ's citations to these two notes are accurate, they are incomplete. These notes also reflect Plaintiff's anxiety prevented him from leaving his home without his wife (Tr. 1007) and to shop with his grandmother (Tr. 1193), and mental status assessments of depressed and anxious mood (Tr. 1007) and tangential and circumstantial thought process (Tr. 1194). Hence, the Court agrees with Plaintiff's assertion that the ALJ erred in weighing Dr. Subervi's report. On remand, the ALJ should reconsider Dr. Subervi's opinions based on the factors set forth in §§ 404.1527(c)(3-6), 416.927(c)(3-6), such as the level of support provided for the opinions and how consistent the opinions are with other opinions and evidence in the record.

### 4. State Agency and psychological consultant opinions

Lastly, on remand, the ALJ should also reconsider the weight assigned to the opinions of the state agency non-examining consultants, Barry Morris, Ph.D. (Tr. 98-100) and Lawrence Annis, Ph.D. (Tr. 143-145), and to the opinion of psychological consultant Nydia Conrad, Psy.D. who evaluated Plaintiff on September 25, 2018 (Tr. 1168-72). The ALJ assigned "great weight" to Annis's and Morris's opinions that Plaintiff had moderate limitations in restriction of activities of daily living, moderate limitations in difficulties in

maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 20). The regulations specify that state agency consultants are highly qualified specialists who are also experts in the Social Security disability programs and, thus, their opinions are entitled to great weight if the evidence supports their assessments. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). However, "[t]he weight due to a non-examining physician's opinion depends ... on the extent to which it is supported by clinical findings and is consistent with other evidence." *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869, 873 (11th Cir. 2011)); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). As Plaintiff indicates, these consultants both assessed Plaintiff's limitations in 2015, and thus, did not have before them Plaintiff's subsequent treatment records.

Similarly, the ALJ should reconsider the "great weight" accorded to Conrad, the consultative psychologist to whom the ALJ cited as the basis for rejecting the opinions of Plaintiff's long-term treating psychiatrist, Dr. Vijapura (Tr. 23). The ALJ pointed to Conrad's opinion that Plaintiff had mild to moderate limitations in the ability to understand, remember and carry out instructions; moderate limitations in the ability to appropriately interact with supervisors, co-workers, and the public; and moderate limitations in the ability to respond to changes in a routine work setting (Tr. 23). Like Dr. Vijapura and others offering opinion evidence, Conrad opined that Plaintiff has "difficulty with focusing and concentration due to anxiety and depression [and has a] history of impaired judgment" (Tr. 1171). She also opined that Plaintiff's "anxiety creates problems with interpersonal relationships [and that he] becomes nervous and confused easily" (Tr. 1172). Importantly, Conrad indicated that she did not have sufficient information to form

an opinion within a reasonable degree of medical or psychological probability as to past limitations (Tr. 1172).

Accordingly, the case is remanded to the ALJ to properly assess the weight given to Dr. Vijapura, LMHC Lamson, psychologists Subervi and Conrad, and state agency non-examining consultants, Morris and Annis, and to provide sufficient support for the Court's review.

## B.  RFC and VE Hypothetical

It is unnecessary to address the remaining issues– whether the ALJ's RFC analysis is supported by substantial evidence and whether the ALJ erred in evaluating Plaintiff's subjective complaints.  However, the Court points out that on remand, in assessing Plaintiff's RFC, the ALJ may decide not to include all of the limitations imposed by those providing medical or psychological opinions.[6]  Relatedly, the ALJ is not required to include findings in the VE hypothetical that the ALJ determines to be unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Finally, in light of the Court's remand for re-evaluation of the medical opinion evidence, the ALJ is directed to re-evaluate Plaintiff's subjective complaints on remand too.[7]

---

[6] RFC is an assessment based on all relevant medical and other evidence of Plaintiff's ability to work despite his impairments. *Castle v. Colvin*, 557 Fed. App'x. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1987)).  In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 404.1545, 416.920(e), 416.929(c)(3), 416.945.

[7] In the decision, the ALJ found Plaintiff's subjective complaints "partially consistent with the evidence of record" (Tr. 19).

**Conclusion**

Accordingly, after consideration, it is hereby

ORDERED:

   1.  The decision of the Commissioner is REVERSED and REMANDED to the

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further

administrative proceedings consistent with this Order.

   2.  The Clerk is directed to enter final judgment in favor of Plaintiff and close the

case.

**ORDERED** in Tampa, Florida, on March 11, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE